VAN ZANDT v. HANOVER NAT. BANK.

(Circuit Court of Appeals, Second Circuit.   October 11, 1906.)

No. 247.

1. BANKS AND BANKING—LIEN OF BANK—SPECIAL DEPOSIT OF SECURITIES.

A bank has no general lien on securities deposited with it for a special purpose.

2. SAME—CONSTRUCTION OF AGREEMENT FOR LIEN.

Defendant bank prepared and took a contract, signed by a correspondent bank, by which the latter agreed that "all bills of exchange, notes, * * * money, and property of every kind owned by the undersigned, * * * deposited with the said bank or under its control, as collateral security for loans or advances already made or hereafter to be made, to or for account of the undersigned, by said bank or otherwise," might be held by it as security for any and all indebtedness of the correspondent. *Held*, that such contract applied only to security or property deposited with defendant as collateral security, the words "or otherwise" having reference to the nature of the liability for which the collateral should remain as security, and not to the manner in which it came into defendant's possession, and that it did not give defendant a lien on notes sent it by the correspondent for discount and credit, but which it declined to discount, to secure an overdraft unintentionally made by the correspondent in the expectation that the notes would be discounted and the proceeds placed to its credit.

3. CONTRACTS—RULES OF CONSTRUCTION.

An instrument is to be most strictly construed against the party who prepared it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 736.]

4. SET-OFF AND COUNTERCLAIM—TROVER AND CONVERSION.

A defendant cannot plead an indebtedness of plaintiff as a set-off or counterclaim in an action at law for conversion in a federal court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Set-Off and Counterclaim, §§ 17, 18.]

In Error to the Circuit Court of the United States for the Southern District of New York.

Writ of error by the plaintiff in the court below to review a judgment for the defendant entered upon a verdict directed by the court.

E. B. Whitney, for plaintiff in error.

P. S. Dudley, for defendant in error.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The question whether the plaintiff (as receiver of the American National Bank of Abilene), or the defendant, was entitled to the possession of the four promissory notes which came to the hands of the defendant in January, 1905, depends upon the following facts: The defendant had been for some time the New York correspondent of the Abilene bank, and the Abilene bank had kept with the defendant a deposit account, making deposits and withdrawing them by checks, bills of exchange, etc. From time to time it forwarded notes or commercial paper made by various persons and owned by itself, indorsing said paper, and offering it to the defendant for sale with a request that in case the defendant purchased the paper the proceeds thereof should be deposited in the deposit account. November 27, 1903, the Abilene bank signed a written contract of hypothecation by which it agreed with the defendant—

"That all bills of exchange, notes, * * * money, and property of every kind owned by the undersigned * * * deposited with the said bank, or which may be in any wise in said bank, or under its control, as collateral security for loans or advances already made, or hereafter to be made, to or for account of the undersigned, by said bank, or otherwise, may be held, collected, and retained by said bank until all liabilities present or future of the undersigned * * * of every kind of said bank, now or hereafter contracted, shall be paid and fully satisfied."

In January, 1905, the four notes in controversy, made by third persons and indorsed by the Abilene bank, payable, three of them, respectively, in 90, 60, and 30 days, and one of them in 6 months, were forwarded by it from Abilene, Tex., to the defendant, by mail, with instructions: "We hand you for discount and credit." The defendant received two of them January 14th, and two of them January 16th, and immediately notified the Abilene bank, by telegrams and letters, that the paper was not satisfactory. After the first two notes had been mailed to the defendant, but before it had received notice of the defendant's refusal to discount them, the Abilene bank drew a check upon the defendant for $3,825.45. This check was paid by the defendant January 17th, resulting in an overdraft of the account of the Abilene bank of about $3,500. Thereupon the defendant, without consulting the Abilene bank, credited the account of that bank with $3,500, and notified the latter by mail that it had made a "temporary loan" of that amount "against collateral in our hands." Before this letter reached Abilene by the ordinary course of mail the Abilene bank had failed, and the plaintiff had been appointed its receiver by the Comptroller of the Currency.

Upon these facts it is plain that the plaintiff was entitled to recover unless the terms of the contract of November 27th authorized the de-

fendant to treat the notes as a security in its hands for an overdraft or indebtedness by the Abilene bank. In the absence of a contract of that purport, it would have been the duty of the defendant, upon receiving the notes and concluding not to discount them, to return them to the Abilene bank or hold them awaiting further instructions and subject to the disposition of that bank. The Abilene bank had not asked for a temporary loan, and was entitled to have its notes used as it had directed, so as to realize their full proceeds; and if not so used, it was entitled to make such disposition of the notes as it saw fit. As the notes had been sent to the defendant for a specific use, they did not become subject to a general banker's lien. Such a lien does not attach upon securities which are deposited with the banker for a special purpose. Armstrong v. Chemical National Bank (C. C.) 41 Fed. 234, 6 L. R. A. 226; Brandao v. Barnett, 12 Cl. & Fin. 787; Reynes v. Dumont, 130 U. S. 354, 9 Sup. Ct. 486, 32 L. Ed. 934; Wyckoff v. Anthony, 90 N. Y. 442.

The language of the agreement of November 27th is susceptible of different interpretations. It may be read as follows:

"That all * * * notes * * * owned by the undersigned, * * * deposited with said bank * * * or which may be in any wise in said bank or under its control, as collateral security * * * or otherwise, * * * may be held, collected, and retained by said bank."

Read in this way, it is capable of being construed as a pledge of all notes belonging to the Abilene bank that may in any way come into the hands of the defendant, even though they come accidently or against the will of the Abilene bank. But such a reading omits a material part of the instrument, and when that is supplied the instrument reads that all notes "deposited with said bank * * * or under its control, as collateral security for loans or advances already made, or hereafter to be made, to or for account of the undersigned by said bank, or otherwise, may be held," collected, etc. With these words supplied, the words "or otherwise" may be read as referring to the nature of the liability for which the collateral is security, and as meaning to pledge the collateral, not only for loans and advances, but also for any liabilities otherwise arising, such, for instance, as that of an indorser or surety upon the commercial paper of third persons. If the agreement had been intended to pledge all securities belonging to the Abilene bank that might come in any manner to the hands of the defendant, or even of all that might rightfully come to its hands, that intention could have been manifested unmistakably, and in very simple terms, by omitting the words "deposited" and "as collateral security," etc. The latter are descriptive words which identify the securities which the defendant may hold and collect by reference to the purposes for which they come into his hands. If the contention for the defendant in error is correct, these words were used unnecessarily.

"The language of a contract is always presumed to be used with reference to the matter in the minds of the parties when they contract. Therefore words of broad signification will be interpreted with reference to the subject matter of the contract, unless the intention is clear that they should be taken in the broad meaning." Jones, Construction of Contracts, § 220. The parties here were contracting with reference

to notes, property, etc., which should be deposited by the Abilene bank with the defendant, or should come under its control as collateral security for certain obligations and liabilities, and the general words "or otherwise" should be held to relate to notes and property which should come to the hands of the defendant by way of deposit or collateral security, or some other kind of bailment.

It is apparent, from the fact that the Abilene bank is not named in the instrument, otherwise than as "the undersigned," that it was one for general use prepared by the defendant. Such instruments are always to be construed most strictly against the party by whom they have been prepared. This rule was applied to an instrument like the present one in Gillet v. Bank of America, 160 N. Y. 549, 55 N. E. 292. It is not to be inferred, in the absence of clear terms, that the Abilene bank intended to authorize the defendant to keep and collect such of its notes or property as it did not intend to part with, or such as might be obtained by the defendant without its consent.

The notes in controversy were never deposited by the Abilene bank with defendant, nor did they come into its hands as collateral security within the commonly accepted meaning of these terms. They were temporarily in the hands of the defendant under an option to purchase them. We conclude that they did not come within the terms of the pledge, and that the defendant did not obtain a lien upon them.

If the check drawn by the Abilene bank upon the defendant, which caused the overdraft of its account, had been drawn with knowledge of the defendant's refusal to discount the notes, a different question would be presented; but it is fair to assume that this check was drawn in the expectation that before its presentation the notes would have been discounted and the proceeds credited to the Abilene bank.

The contention for the defendant in error that it was entitled to set off or counterclaim the indebtedness owing to it by the Abilene bank when the latter became insolvent is wholly untenable. Such a defense is not available in an action at law for conversion, and, if the defendant had any right of equitable set-off, this should have been asserted by a bill in equity.

The assignment of error based upon the ruling directing a verdict for the defendant seems to be well taken, and accordingly the judgment is reversed.