# H. C. GARRETT, Respondent, v. BANK OF CHELSEA, Appellant.

Garrett v. Bank of Chelsea.

### In the Kansas City Court of Appeals, May 22, 1922.

1. **BANKS AND BANKING: Bills and Notes: Bank Not Authorized to Hold Collateral After Payment of Note Given to Secure a Note Previously Executed and Unpaid.** Where note to a bank authorized bank upon nonpayment to sell collateral held by bank to secure the note, and provided that all the collateral after payment of note "be applied as herein provided to the payment of any other obligation or indebtedness due by the maker hereof to said bank or the holder of this note," and the surplus, if any, after the payment of the note and any other indebtedness due by maker to the bank, together with all costs, be paid by maker, and that if proceeds of such collection or sale shall not be sufficient to pay "note, costs and all other indebtedness" the maker agrees on demand to make good deficit, *held*, the bank was not authorized to hold the collateral after payment of the note to secure other previously executed but unpaid note.

2. **BILLS AND NOTES: Ambiguous Language Contained in Note Prepared by Bank Construed Strongly Against Bank.** Obscure and ambiguous language used in a note prepared by bank for maker's execution to bank will be construed strongly against the bank.

3. **BANKS AND BANKING: Liens: Under Law of Oklahoma Bank Not Entitled to Lien on Collateral of Maker of Note, the Maker Not Being a "Customer" of Bank Within the Statute.** Under a statute of the State of Oklahoma (Rev. Laws Okl. 1910, sec. 3854), giving a bank a genral lien upon all property in its hands belonging to a customer for the balance due to it from such customer in the course of business, a bank to whom the maker had given one note, and to which it thereafter gave a note in renewal of another note received by the bank from a third party, did not have a lien on collateral held by the bank to secure the renewal note, to secure payment of note first mentioned after maker's payment of renewal note, the maker not being a "customer" of bank within the statute.

4. ———; ———: **Bank Does Not Have General Lien on Securities Deposited With it For a Special Purpose.** Where securities are deposited with a bank generally and not for a particular purpose

the bank has a general lien upon the same and they may be retained by the bank for a general balance or payment of other claims, but where the deposit is made for a particular or special purpose, this rule does not apply.

Appeal from the Circuit Court of Jackson County.—*Hon. Willard P. Hall*, Judge.

AFFIRMED.

*J. T. Jennings, Watson, Gage & Ess*, and *S. A. Horton* for respondent.

*Vern E. Thompson* and *Halbert H. McCluer* for appellant.

BLAND, J.—This is an action for conversion of corporate stock of the admitted value of $2000. The case was tried before the court without the aid of a jury. At the close of all the evidence the court declared the law to be "that plaintiff is entitled to recover the reasonable value of the stock at the time of conversion, November 5, 1919, with six per cent interest from that date." There was a verdict and judgment in favor of plaintiff in the sum of $2170 and defendant has appealed.

The facts show that on August 14, 1918, plaintiff at Miami, Oklahoma, executed a promissory note in the sum of $1062.50 in favor of the Black Eagle Mining Company of that place and as collateral security for the payment of the note deposited with the mining company 200 shares of stock of that company. These are the shares alleged to have been converted by defendant. On October 15, 1918, the note was renewed for $1,000 and the mining company's shares remained deposited with the mining company as security for the payment of the debt. This latter note, which was due ninety days after date, became the property of defendant, the collateral going with it, and on February 19, 1919, plaintiff renewed the note with the defendant agreeing to pay the same on May 15, 1919. The note recites that plaintiff had de-

posited and pledged with defendant bank as collateral security for the payment of the note said mining shares. The note then provides—

"In the event of the non-payment of this note at maturity said Bank, its President or Cashier, is hereby authorized to use, endorse, collect, transfer, hypothecate, sell or convey said collaterals, or any collaterals substituted for or added to the above, or any part thereof, or cause the same to be done, at public or private sale, with or without notice or demand of any sort, at such place and on such terms as said bank may deem best, and said bank is authorized to purchase any collaterals when sold, and the proceeds of such collection, sale, transfer or hypothecation shall be applied to the payment of this note, together with all protests, damages, interest, costs and charges due upon this note or incurred by reason of its non-payment when due, or in the execution of this power. *All collateral held by said bank to secure this note may, after the payment of this note, be applied as herein provided to the payment of any other obligation or indebtedness due by the maker hereof to said bank or the holder of this note.* The surplus, if any, after the payment of this note and any other and all indebtedness due by the undersigned to said bank, together with all costs as above stated, shall be paid to the maker of this note. If the proceeds of such collection or sale shall not be sufficient to pay this note, costs and all other indebtedness, the maker agrees on demand to make good the deficit."

On November 5, 1919, this note was paid and surrendered to the plaintiff but defendant refused to surrender the shares of stock, claiming that it had the right to hold the same for other indebtedness due it from plaintiff. This indebtedness consisted of a note dated Chelsea, Oklahoma, August 15, 1918, and provided that on demand after date plaintiff agreed to pay to the defendant the sum of $1200 with interest. This note had never been paid.

The answer pleads the provision of the note of February 19, 1919, and that by reason of said note defendant had a right to hold the stock as security for the amount due under the note and also as security "for any and all other indebtedness" due from plaintiff herein to the defendant. The answer also pleads the following statute of the State of Oklahoma—

"A bank has a general lien, dependent on possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of business."

The answer pleads the fact that there is a $1200 note and interest thereon due the defendant and that defendant had a right to hold the collateral deposited as security for said note.

Defendant does not dispute that the bank had no right under the common law to hold the collateral deposited to secure the $1000 note as security for the $1200 note in the absence of an agreement between the parties that that might be done, or lacking the statute of the State of Oklahoma quoted supra, but maintains that that part of the note that we have italicized shows that it was agreed between the parties that the bank might hold the collateral as security for the $1200 note.

We do not think that the entire agreement contained in the $1000 note bears out this contention. The clause relied upon by the defendant is not complete within itself but provides that the collateral may be applied "after the payment of this note" *"as herein provided."* It is apparent that the agreement has to do with the proceeds of the sale of the collateral in case of non-payment of the $1000 note in accordance with its terms. The agreement goes on to say that the $1000 note shall be first paid, in case of the sale of the collateral, and the "surplus, if any, after the payment of this note and *any other and all indebtedness due by the undersigned to said bank,* . . . shall be paid to the maker of this note." It then provides that if there is not enough money to pay the $1000 note and costs *and all other in-*

*debtedness,* "the maker agrees on demand to make good the deficit." The words, "as herein provided" contained in the clause of the note relied upon by the defendant refer to the other parts of the agreement wherein it is stipulated that in case of default in the payment of the $1000 note that note and costs should be first paid from the sale of the collateral, and the balance left from the proceeds of the sale, if any, should be paid upon any other indebtedness due to the bank. We think this is the meaning of the stipulations contained in the note but in any event if this is not the plain meaning, that meaning is obscure and ambiguous and the language used must be construed strongly against the defendant bank, in view of the fact that the wording of the note was that of the bank. [Van Zandt v. Hanover National Bank, 149 Fed. 127; Hanover National Bank v. Suddath, 215 U. S. 110.] In view of the non-happening of the event upon which the collateral might have been disposed of to satisfy the indebtedness due from plaintiff to defendant, the latter had no right to apply the security to the payment of the $1200 note, even though that note was due when the $1000 note to defendant was executed as there was no agreement that this might be done.

The cases of Merchants National Bank v. Demere, 19 S. W. 38 and Selma Bridge Co. v. Harris, 31 So. 508, relied upon by the defendant, are not in point. In the first case the note provided that "to secure the prompt payment of this note or any general balance due or to become due the Merchants National Bank are hereby pledged the following collaterals" etc. In the latter case the note provided that the transfer of the stock to the bank to secure the note executed at the time was "to secure payment at maturity of said note and after its payment to secure any other indebtedness" etc.

Nor do we think that the defendant was entitled to keep the security under the provisions of the law of Oklahoma quoted. Plaintiff insists that the law of Oklahoma is merely declaratory of the common law which is to the effect that where securities are deposited with a

bank generally and not for a particular purpose the bank has a general lien upon the same and they may be retained by the bank for a general balance or payment of other claims but where the deposit is made for a particular or special purpose this rule does not apply. [7 C. J. 660; Deal v. Mississippi County Bank, 79 Mo. App. 262; First National Bank of Sharon v. City National Bank, 102 Mo. App. 357.]

As was stated in Armstrong v. Bank, 41 Fed, 234, 239—

"It is equally familiar law that the lien does not exist when the securities have been deposited for a special purpose, or for the payment of a particular loan; and, where they are delivered specifically to protect the banker in a particular transaction or series of transactions, he has no lien upon them for any other purpose, and cannot assert one for any other indebtedness, whether arising upon general account or otherwise."

[See also Reynes v. Dumont, 130 U. S. 354.] However that may be, we think that the law of Oklahoma referred to has no application to the facts in this case. That law has relation to property belonging to a "*customer*" and provides that the bank shall have a lien for the balance due it "from such customer in the course of business." In 17 C. J. at page 443, "a customer of a bank" is defined as—

"A person who sustains habitual or consecutive business relations with a bank. The term involves something of use and habit; but it is not necessary that one should have an account at a bank to be included within the meaning of the phrase."

In Dunshee v. Standard Oil Co., 126 N. W. 342, 344 (Iowa) "a customer" is defined as: "A person with whom a business man has repeated or regular dealings." [See also Weinhouse v. Cronin, 68 Conn. 254.] We do not think that the relation that plaintiff bore to the defendant bank made him a customer of the latter. Defendant pleads in its answer the law of Oklahoma and

relies upon the statute of Oklahoma as a defense, and the burden of proving the fact that plaintiff was its customer was upon the defendant.

There is no evidence as to how plaintiff happened to execute the $1200 note to the defendant. The facts set up in the reply tend to show that its excution grew out of a transaction with a mining company, in which plaintiff was apparently interested, and another bank in the State of Oklahoma and was for the purpose of having defendant bank advance enough cash to the other bank to cover over-drafts made by the mining company upon the latter and the note was given to the defendant by agreement of all of the parties as the result of the transaction. This would indicate that in the $1200 note transaction plaintiff, if a customer at all, was one of the other Oklahoma bank rather than of the defendant bank. However, there is no evidence of these facts but we recite them to show that the mere fact that a $1200 note was given to the defendant bank does not necessarily prove that plaintiff intended to or did become its customer. As to the $1000 note, that note was merely a renewal of the note in that sum given to the Black Eagle Mining Company. The latter note was assigned to the defendant. Plaintiff was thus brought into relation with the defendant bank through no special instance of his own but through particular circumstances. While the fact that the renewal of this note may be evidence of the fact that plaintiff was transacting business with the bank, in view of the definitions of the word "customer" we do not think that one transaction, or even two transactions such as appear in the record in this case, was sufficient to make plaintiff a customer of defendant bank. Therefore, we think that the statute of Oklahoma pleaded by the defendant has no application.

Entertaining these views we have concluded that the judgment should be affirmed, and it is so ordered. All concur.