EMPIRE GAS CORPORATION,
Respondent,

v.

Michael R. GRAHAM, Appellant.

No. WD 33765.

Missouri Court of Appeals,
Western District.

June 28, 1983.

J.D. Williamson, Jr., Independence, for appellant.

Steven G. Emerson and Marvin Ray Motley, Kansas City, for respondent.

Before DIXON, P.J., and KENNEDY and LOWENSTEIN, JJ.

PER CURIAM:

This is an appeal from a judgment enjoining defendant/appellant Michael R. Graham from soliciting certain customers of plaintiff/respondent Empire Gas Corporation.

Empire Gas is a Missouri corporation engaged in the sale of propane (also referred

to as liquefied petroleum gas or L.P. gas) and various propane-related equipment in 39 states. Approximately 70% of Empire's business is the sale of propane and the remaining consists of the sale of equipment. One-fourth of Empire's equipment business is the sale of carburetion, that is, the equipment and hardware used to convert motor vehicles from gas to propane.

Defendant Graham was hired on July 28, 1980, by Jasper Norman, regional sales manager for Empire. According to Norman and Martin Dryden (president of Empire), Graham's primary responsibility was the selling of carburetion equipment. Both stated that 90% of Graham's job was devoted to carburetion sales in the Kansas City metro area and 10% of his job was to act as Empire's direct liaison with Interstate Brands (a major customer of plaintiff). In connection with his carburetion sales, Norman testified that Graham was to call on existing carburetion customers in the area and to develop new customers. Graham obtained the name of prospective customers by perusing the Yellow Pages for companies with service vehicles, taking the names of companies from trucks seen on the street and receiving referrals from Empire's regional office. Norman testified that he had no knowledge of the specific prospects Graham had called on while he was with Empire.

Graham left Empire on June 24, 1981, and immediately began employment with Diversified Energy Systems, Inc., in Kansas City. Diversified is solely engaged in the sale of carburetion equipment and is a direct competitor of Empire's in the Kansas City metro area.

Empire brought suit to enforce the post-employment non-competition clauses of Graham's employment contract. The court issued an injunction prohibiting defendant, until June 24, 1984, from soliciting the sale of carburetion equipment to 61 named "entities." The list included mostly businesses, with one city and one municipal police department.

While plaintiff's petition prayed additionally for an injunction against defendant

Graham's continued employment with Diversified, against his engaging in the liquefied petroleum business, against his hiring employees of Empire, and against his using Empire's customer lists, the injunction was not that broad. It covered only the solicitation of the specific named businesses as described in the preceding paragraph. Only defendant Graham appeals.

I

The question before us is whether the employment contract supports the injunction. The activities which were enjoined, i.e., the solicitation of certain named businesses for the sale of carburetion equipment, could only be in violation of paragraph 8 of the contract. This paragraph reads:

Employee agrees that in addition to any other limitation, for a period of three years after the termination of his employment hereunder, he will not, on behalf of himself or on behalf of any other person, firm or corporation, call on any of the customers of employer for the purpose of soliciting and/or providing to any of said customers any liquefied petroleum gas, nor will he, in any way, directly or indirectly, for himself or on behalf of any other person, firm or corporation, solicit, divert, or take away any customer of employer.

The decisive issue is whether the 61 named businesses were "customers" of Empire? With the exception of American Fence Company, Anderson Parks, Yellow Cab, Colonial Bakery, Exhibitors Film Delivery and Gelco Courier, there is no evidence that any of them were customers.

The term "customer" has not been defined in Missouri in the post-employment non-competition contract context. Black's Law Dictionary, 348 5th ed. (1979), says that a customer is "[o]ne who regularly or repeatedly makes purchases of, or has business dealings with, a tradesman or business.... Ordinarily one who has had repeated business dealings with another."

Webster's Third New International Dictionary, 559 (1971), says that a customer is "one that purchases some commodity or service . . . esp.; one that purchases systematically or frequently . . . one that patronizes or uses the services . . . ."

In *Garrett v. Bank of Chelsea,* 211 Mo. App. 238, 241 S.W. 87, 89 (1922) the court defined "a customer of a bank" as " 'a person who sustains habitual or consecutive business relations with a bank. The term involves something of useful habit; but it is not necessary that one should have an account at a bank to be included within the meaning of the phrase.' " (Quoting from 17 C.J. Customer at 443 (1919)).

> To be protected, . . . a customer list must be more than a listing of firms or individuals which could be compiled from directories or other generally available sources. Only when it represents a selective accumulation of information based on past selling experience, or when considerable time and effort have gone into compiling it, will appropriation and use in competition by the former employee be enjoined.

Blake, Employee Agreements Not to Compete, 73 Harv.L.Rev. 625, 655 (1960).

The list of businesses in the injunction was apparently made up from two lists: one consisting of Graham's weekly reports; the other furnished by Graham to Empire upon his departure. Dryden, testifying for Empire, said of the list: "These are business [sic] that Mike had called on during the period of time and that he stated that he had called on to solicit for propane carburetion." The weekly reports contained both customers and prospects and the list furnished by Graham was specifically referred to as a list of prospects. Dryden could only name as current customers the six businesses referred to above.

▮ We hold that none of the businesses listed in the injunction, save the six mentioned above, were shown to be customers of Empire. Since the contract specifically protects only customers of Empire, it will be applied to cover only those six businesses.

## II

▮ Graham further argues that he should not be enjoined from soliciting sales of carburetion equipment even to these six businesses. He claims the employment contract, as interpreted by the trial court, is unreasonably restrictive when it prevents his solicitation for carburetion equipment (as opposed to L.P. gas, the main part of Empire's business). Defendant states his proposition as follows:

> Many courts have determined whether a restrictive covenant in an employment contract was reasonable by looking at whether the length of time and the range of area contained in the agreement is greater than reasonably necessary for the protection of the employer. . . . The Defendant's contention is not that the time and area of the restrictive covenant are unreasonable but rather that the scope of Mr. Graham's activity (i.e., caburation equipment sales) covered in the trial court's interpretation of the restrictive covenant is broader than necessary to protect the Plaintiff, Empire Gas from unfair competition. The Plaintiff simply will not be hurt by the Defendant's selling of carburation equipment.

Graham cites to us no authority supporting his position. Indeed, public policy approves such contracts because "an employer has a proprietary right in his stock of customers and their good will and, if otherwise reasonable, the court will protect the asset against appropriation by an employee . . . ." *Mills v. Murray,* 472 S.W.2d 6, 12 (Mo.App.1971). When it is adequately shown that the businesses sought to be protected are in fact customers of the employer, a contract reasonably restricting the former employee's solicitation of those customers is enforceable. *National Starch and Chemical Corp. v. Newman,* 577 S.W.2d 99, 104–05 (Mo.App.1978); *Chemical Fireproofing Corp. v. Bronska,* 542 S.W.2d 74, 80 (Mo.App.1976); *Mills v. Murray, supra.*

▮ Graham also claims that in his employment with Diversified he is soliciting

only for carburetion sales and that the employment contract cannot prevent his activities since it only prohibits his solicitation for the sale of liquefied petroleum gas. However, the contract expressly protects "any customer" of Empire, and that includes carburetion customers as well as L.P. gas customers.

The judgment is reversed and the case is remanded for the entry of a new decree in which Graham's solicitation of American Fence Company, Anderson Parks, Yellow Cab, Colonial Bakery, Exhibitors Film Delivery and Gelco Courier is enjoined and the other names listed in the injunction are deleted.