**STEAMATIC OF KANSAS CITY, INC., Respondent, Cross–Appellant,**

v.

**Samuel Shawn RHEA, Appellant, Cross–Respondent.**

**Nos. WD 40332, WD 40360.**

Missouri Court of Appeals, Western District.

Nov. 15, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 27, 1988.

Application to Transfer Denied Feb. 14, 1989.

James D. Boggs, Kansas City, for respondent, cross-appellant.

William C. Nulton, Shughart, Thomson & Kilroy, P.C., Kansas City, for appellant, cross-respondent.

Before CLARK, P.J., and
LOWENSTEIN and FENNER, JJ.

CLARK, Presiding Judge.

Plaintiff and cross-appellant Steamatic of Kansas City sued for and was granted a permanent injunction against defendant-appellant Sam Rhea to enforce an agreement not to compete. The issue in the case is whether Steamatic's business operations created a protectible interest of a proprietary nature in a stock of customers and whether the injunction was properly granted. We reverse in part and affirm in part.

The facts of the case were essentially undisputed. Steamatic is engaged in the business of providing general cleaning services and specialty services for disaster restoration. Where the contents of premises are damaged by fire, smoke or exposure to water and the elements, Steamatic cleans and refurbishes the carpets, drapes, furniture, machines and other items affected by the casualty. In most, if not all cases, Steamatic obtains the business by soliciting the owner of the damaged goods and describing the services available. Although insurance may be involved, it is the owner of the property who decides whether to employ Steamatic. Despite this, Steamatic, as part of its sales efforts, maintains good relations with insurance adjusters to the end that they will recommend Steamatic where damage restoration services are to be engaged.

Rhea was employed by Steamatic as a marketing representative. His duties included customer solicitation, preparation of cost estimates, supervision of restoration work and the conduct of informational seminars. When he was hired, he signed certain agreements which in general prohibited him from disclosing proprietary and confidential information of Steamatic acquired in the course of his employment. The agreements also prohibited him, within stated time and geographical limits, from entering into a business in competition with Steamatic if he left the company's employ.

Late in 1987, Rhea decided to leave Steamatic and in contemplation of the move, he secretly extracted from the company files and destroyed his employment agreements which restricted his post-employment activities. When Steamatic learned of this, Rhea was discharged. Subsequently, upon learning that Rhea was entering a business in competition with Steamatic, this suit was filed.

The trial court entered a temporary restraining order and, after a trial on the merits, entered a permanent injunction which enjoined Rhea from conducting any activities which he had previously performed for Steamatic. The term of the injunction was two years and the restricted area consisted of six counties in the greater Kansas City community. The order lacked detail as to what activities were contemplated by the injunction and, after a subsequent hearing, an amended order in particular detail was filed. The court also found that Steamatic had no protectible interest in trade secrets or proprietary information except as to customer contacts. The amended order appealed from therefore enjoins Rhea from engaging in the business of fire loss restoration services for a term of two years and from utilizing the customer contact lists of Steamatic. Both Rhea and Steamatic appeal, the latter on the ground that the order was too limited in respect to non-disclosure of confidential information.

### RHEA'S APPEAL

Rhea contends that the trial court erred in granting the injunction, despite the admitted terms of his employment contract restricting his right to compete with Steamatic. He argues that Steamatic had no protectible interest in any group of customers and, therefore, the covenant not to compete was unenforceable.

■ Covenants not to compete restrain commerce and limit the freedom of an employer to pursue his trade. Enforcement of such agreements is, therefore, carefully restricted. *Osage Glass, Inc. v. Donovan,* 693 S.W.2d 71, 73–74 (Mo. banc 1985). An employer cannot extract a restrictive covenant from an employee merely to protect himself from competition but a limited time and geographical restraint may be deemed reasonable and enforceable if a legitimate protectible interest of the employer is served. *Deck and Decker Personnel Consultants, Ltd. v. Pigg,* 555 S.W.2d 705, 707 (Mo.App.1977). An employer has a protectible and proprietary right in his "stock of customers" and their good will, *House of Tools and Engineering, Inc. v. Price,* 504 S.W.2d 157, 159 (Mo.App.1973), and in trade secrets. *Continental Research Corp. v. Scholz,* 595 S.W.2d 396, 400 (Mo. App.1980).

■ In the present case, before Steamatic may claim to enforce the agreement prohibiting Rhea from engaging in a competing business, it must appear that Steamatic has a stock of customers who regularly deal with Steamatic. A customer in this sense is one who repeatedly has business dealings with a particular tradesman or business. *Empire Gas Corp. v. Graham,* 654 S.W.2d 329, 330–31 (Mo.App. 1983). Unless the proponent of the restrictive covenant has a trade following, that is, a group of customers who regularly patronize the business of the particular employer, there can be no stock of customers and no protectible interest.

In this case the facts showed that customers of Steamatic, the disaster victims, engaged Steamatic to provide restoration services only on a single occasion after the event of a fire or other casualty. The only possible repeat business which Steamatic could anticipate would be in those rare instances when a second casualty befell the same victim. No evidence was adduced to show that such had occurred in the past or, indeed, that Steamatic enjoyed any repeat business at all.

On these facts, the case is remarkably similar to *Ibur & Assoc. Adjustment Co. v. Walsh,* 595 S.W.2d 33 (Mo.App.1980). Ibur & Associates conducted a public adjusting business for insurance claims. As in the present case, Ibur employees solicited persons who had suffered losses and offered to assist in presenting the claim to the insurance company. There was little repeat business because the casualty losses which generated the opportunity for Ibur's services were single occurrences. The court in *Ibur* held that a restrictive employment contract was not enforceable against a former Ibur sales representative because Ibur had no stock of customers and therefore no protectible interest.

The same rationale employed in *Ibur* applies to the present case. Steamatic was not shown to have had any contact with the customer before the casualty gave rise to a

need for restoration services. After the services were performed, there was no repeat business. Prospects for restoration services were not contacted and solicited through any confidential or privileged source, but merely upon knowledge generally available to the public at large that a casualty had occurred. There was, therefore, no ongoing customer relationship between Steamatic and any identifiable persons or companies.

Steamatic cites *Osage Glass, Inc. v. Donovan, supra,* to support the order the trial court entered enjoining Rhea from engaging in a business in competition with Steamatic. The case is distinguishable. Osage was in the business of installing automobile windshields. Its dealings were with insurance companies, fleet operators, body shops and automobile dealerships. Donovan was the manager of the Kansas city office and, as such, he had developed substantial customer contacts. After leaving Osage and taking employment with a competitor, he was in a position, if not enjoined, to divert that business from Osage to his new employer. It was on this ground that the court decided in favor of enforcing the restrictive covenant. There were no comparable facts in the present case because Rhea was not shown to have any customer following nor, indeed, were there any identifiable customer contacts by reason of the nature of the business.

*Deck and Decker Consultants v. Pigg, supra,* and *Haysler v. Butterfield,* 240 Mo. App. 733, 218 S.W.2d 129 (1949), are also distinguishable because of the feature in each of those cases involving close contacts between the employee and prospective employers who were the source of the employment agencies' business.

Finally, mention need also be made of the relations between Rhea and various insurance adjustors. The evidence did show that Rhea was careful to maintain a good reputation for Steamatic with the adjustors as a company which "got the job done" and satisfied the insured. The purpose was to procure a favorable recommendation for Steamatic by the adjustor if the latter's advice were sought by a disaster victim. This relationship could amount to a protectible customer interest of Steamatic but for the fact that the adjustors were not customers. The evidence was that the owner of the damaged property decided whether to employ Steamatic, or some other company, and it was the owner's responsibility to pay the charges even though the proceeds of an insurance claim would defray the expense in whole or in part. The insurance companies were not Steamatic customers and therefore Steamatic had no protectible interest in the good will of the adjustors.

From the original facts in the case, it is apparent Rhea set about to enter employment competitive with Steamatic under the impression that he would be in violation of his agreement. His conduct in surreptitiously removing and destroying the agreements leads to this conclusion. Guilty conduct, however, is not the test by which the availability of injunctive relief is measured. The question is whether Steamatic had a protectible interest in a stock of customers. It did not and therefore Rhea's conduct in removing his papers from Steamatic's files is not relevant. The trial court erred when it enjoined Rhea from engaging in the damage restoration business.

### STEAMATIC'S APPEAL

■ In a cross-appeal, Steamatic contends the injunction which was entered was too narrow because Rhea was not prohibited from utilizing confidential and proprietary information he acquired while in the employment of Steamatic. The information allegedly was obtained from an employee manual, a contractor manual, instructions on restoration techniques, a quality control manual, a list of insurance adjustors and video instruction tapes. It was uncertain from the evidence which of the listed materials were in Rhea's possession. He was, however, acquainted with their content as a result of his employment and also because he previously operated a Steamatic franchise in St. Joseph.

The trial court found the information in the listed materials not to be confidential, secret or proprietary and therefore refused to enjoin its use by Rhea. Steamatic claims this finding was in error.

■ The burden of proving its interest in secret information lay with Steamatic. *See*

*Mo–Kan Central Recovery Co. v. Heden-kamp,* 671 S.W.2d 396, 400 (Mo.App.1984). A trade secret is any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret. *National Rejectors, Inc. v. Trieman,* 409 S.W.2d 1, 18–19 (Mo. banc 1966).

The trial court's finding in this case that the information available from Steamatic's manuals and other materials was not confidential, secret or proprietary is reviewed on appeal pursuant to *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), that is, the decision must be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. In this review, we also bear in mind that it is for the trial court to determine the credibility of witnesses and the weight to be given their testimony. *In Re Estate of Graves,* 684 S.W.2d 925, 928 (Mo. App.1985).

The employee manual is given to each Steamatic employee and explains basic policies and procedures. The contractor manual describes what need be known to successfully operate a restoration cleaning business and is part of the materials furnished to a Steamatic franchise holder. It includes instructions on restoration techniques. The quality control manual is an update of the contractor manual. The list of insurance adjustors is a compilation from the telephone directory. The video tapes are sales training aids and a demonstration of furnace and air duct cleaning.

The only evidence, apart from the materials themselves, to show that the information in question is secret and proprietary came from the president of the local Steamatic franchise. In general, however, the restoration techniques described are common household methods such as lubricating water damaged parts and using Windex to clean glass. The sales methods also have no unusual features not shared by sales forces in other industries. It is arguable that Steamatic's corrosion control methods may be secret in the industry as evidenced by the fact that Steamatic apparently had no competition for these services.

The principal problem with Steamatic's point is that its case rested entirely on the manuals and exhibits and the testimony by the franchise president that the information in the manuals is unknown outside the Steamatic franchise system. From the manuals themselves, the restricted and confidential nature of the information cannot be verified. The statement by the Steamatic officer is no more than conclusion which the trial court was entitled to disbelieve. *Mo–Kan Central Recovery Co.,* 671 S.W. 2d at 400. Under the applicable standard of review in this case, we are unable to say that the trial court's finding was contrary to the weight of the evidence on this issue.

The judgment in favor of Steamatic is reversed and the case is remanded with directions that judgment be entered in favor of defendant-employee, Samuel Rhea.

All concur.