JTL CONSULTING, L.L.C. and Lockton Companies of St. Louis, Inc., Plaintiffs/Appellants,

v.

Michael F. SHANAHAN, Jr., Defendant/Respondent,

and

Engineered Support Systems, Inc., Intervenor/Third–Party Plaintiff.

Nos. ED 85578, ED 86054.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 24, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 9, 2006.

Application for Transfer Denied May 30, 2006.

Douglas R. Dalgleish, Brian C. Fries, Lathrop & Gage L.C., Kansas City, MO, Mark H. Levison, James M. Paul, Lathrop & Gage L.C., St. Louis, MO, for appellants.

Harry W. Wellford, Jr., James W. Erwin, Krissa P. Lubben, Kimberly A. Yates, Thompson Coburn LLP, St. Louis, MO, for respondent.

Jack Spooner, Howard Wittner, Wittner, Poger, Spewak, Maylack & Spooner, P.C., St. Louis, MO, for third-party plaintiff.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiffs, a consulting company and its insurance broker client, appeal from a judgment in favor of defendant, a former member of the consulting company. The trial court entered summary judgment in defendant's favor on Count I of plaintiffs' lawsuit alleging breaches of customer nonsolicitation clauses and awarded attorney's fees and costs to defendant. We affirm for the reasons that 1) the consulting company did not have a protectable interest in the customers of its client, the insurance broker, and therefore could not enforce a covenant not to solicit its client's customers against a former member; 2) the consulting agreement between the insurance broker and the consulting company and its members did not contain a nonsolicitation clause applicable to the situation in which a member's interest was terminated by the consulting company; 3) the insurance broker was not a third-party beneficiary entitled to enforce the consulting company's nonsolicitation clause contained in the consulting company's operating agreement with its members; and 4) the claim for relief in Count I, on which the judgment

was rendered, was limited to breach of the customer nonsolicitation clause.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### The Parties

Plaintiff, Lockton Companies of St. Louis, Inc. (Lockton), was an independently owned insurance brokerage firm that was in the business of providing insurance products and services and related surety and risk management services. The other plaintiff, JTL Consulting, L.L.C. (JTL), was formed as a limited liability company under the laws of Delaware. JTL's members worked as sales representatives, or "producers," for Lockton's products and services. Defendant, Michael F. Shanahan, Jr., became a member of JTL and a Lockton consultant after JTL was formed.

### The Agreements

This case involves three agreements: 1) The Operating Agreement, executed by the members of JTL on December 31, 1993, 2) the Consulting Agreement, executed by JTL, its members, and Lockton, also on December 31, 1993, and 3) the Additional Member Agreement, executed by JTL, Lockton, and defendant on May 16, 1995.

a. *Relevant Terms of the Operating Agreement*

The Operating Agreement required each member of JTL to submit all of his or her customers' insurance-related businesses exclusively to Lockton.

6.4 *Nature of Duties.* Whereas the Members must act through Clients, each Member shall do all things necessary to maintain, promote and improve the business of the Company and the Client

---

1. We deny as moot defendant's motion to dismiss this appeal. Defendant conceded appellate jurisdiction in his brief.

which is a signatory to the Consulting Agreement with such Member.... Each Member shall, during the term of this Agreement, submit to such Client, solely and exclusively, all insurance related business from the Member's customers served by the Member and all the customers hereafter procured by him or her while a Member, together with all renewals of all such business while a Member.[2]

The Operating Agreement also provided that Lockton would become the owner of all customer accounts produced by a JTL member and that Section X would control solicitation of those accounts after a JTL member's interest was terminated:

6.5 *Ownership of Accounts.* All Customer Accounts produced by a Member shall become the property of the Client through which such account is placed, and a Member shall have no right, title or interest in such Customer Account or in any records of Company or the Client pertaining to such Customer Accounts; provided, however, the provisions of Section X shall control the solicitation of such Customer Accounts following the termination of the Member's interest in the Company.

Section X contained the following clause prohibiting a member's solicitation of any of Lockton's customer accounts for a two-year period after termination:

10.3 *Solicitation of Customer Accounts.* If a Member terminates or causes the termination of such Member's Interest, for a period of two (2) years following the resulting termination of the Member's affiliation with the Company, the Member shall not, on behalf of such Member of any other Person, call upon or solicit or in any way do business with any Customer Accounts owned by any Client or its Affiliates or owned by any other broker or employee associated with such Client or its Affiliates regardless of whether or not these Customer Accounts were acquired by such Client or its Affiliates during the Member's affiliation or during the two (2) years following the termination of the Member's affiliation with the Company and regardless of whether or not these Customer Accounts were produced for such Client or its Affiliate by the Member....

The Operating Agreement also recited that it contained the parties' entire agreement except for the Consulting Agreement and any other written agreement among JTL, Lockton, and the members of JTL:

12.4 *Entire Agreement.* Except as may be set forth in the Consulting Agreement among the Company, a Client and Members and any other written agreements, this Agreement contains the entire agreement and understanding among the parties hereto with respect to the terms herein referred to, and no representations, promises, agreements or understandings, written or oral, not herein contained shall be of any force or effect.

It further recited that "[n]one of the provisions contained in this Agreement shall be for the benefit of or enforceable by any third parties...." Section 12.13 allowed the prevailing party to recover attorney's fees incurred to enforce the Operating Agreement.

b. *Relevant Terms of the Consulting Agreement*

In the Consulting Agreement, JTL and its members agreed to provide brokerage

---

**2.** "Company" was defined as JTL. "Client" was defined as any organization or entity for which JTL or its members provided consulting or management services. The only Client that was a signatory to the Consulting Agreement was Lockton.

services for Lockton's insurance products and services in return for compensation paid by Lockton. Article V of the Consulting Agreement provided that all customer accounts produced by JTL's members would become Lockton's property, and the provisions of Article VII would control solicitation of those accounts after the termination of the Consulting Agreement or a JTL member's interest in JTL:

All customer accounts produced by the Members shall become the property of Client, and neither JTL nor any Member shall have right, title or interest in such accounts or in any records of Client pertaining to such accounts; provided, however, the provisions of Article VII shall control the solicitation of such accounts following the termination of this Agreement or a Member's interest in JTL.[3]

Only one section of Article VII contained a nonsolicitation clause pertaining to customer accounts. This section applied to two situations; if the Consulting Agreement was terminated by JTL, or if it was breached or terminated by Lockton:

7.03 *Solicitation of Accounts.* If this Agreement is terminated by JTL, for a period of two (2) years following such termination, JTL and the Members agree not to, either on their own account or on behalf of any other person, partnership, company or corporation, call upon or solicit or in any way do business with any customer accounts owned by Client or affiliates of Client or owned by any broker or employee associated with Client or affiliates of Client regardless of whether or not such accounts were acquired by Client or affiliates of Client prior to or during the term of this Agreement or during the two (2) years following the termination of this Agreement and regardless of whether or not

such accounts were produced or serviced for Client or affiliates of Client by a Member. If this Agreement is breached or terminated by Client. . . .

The Consulting Agreement also contained a provision allowing the prevailing party to recover attorney's fees incurred to enforce the obligations of Lockton, JTL or JTL's members under the agreement. It was undisputed that JTL had not terminated the Consulting Agreement with Lockton.

### c. *The Additional Member Agreement*

The Additional Member Agreement provided that defendant agreed to be bound by both the Operating Agreement and the Consulting Agreement in exchange for his admission as a member of JTL.

### Trial Court Proceedings

On November 3, 2003, JTL and Lockton (hereinafter, collectively, plaintiffs) filed a petition to recover damages and obtain injunctive relief for breach of the customer nonsolicitation clauses in the Operating Agreement and in the Consulting Agreement. In Count I of the petition, plaintiffs alleged that on September 12, 2003, defendant "verbally informed plaintiffs that he was leaving JTL and Lockton" and "directly and indirectly solicited customer accounts." Plaintiffs further alleged in Count I that defendant's actions resulted in a direct financial loss to both JTL and Lockton and constituted a breach of the Operating Agreement, the Consulting Agreement, and the Additional Member Agreement. Plaintiffs sought an injunction to enforce the customer nonsolicitation clauses. Defendant moved for summary judgment on the claim in Count I on the ground that neither JTL nor Lockton was entitled to enforce the nonsolicitation clauses in those agreements.

---

**3.** "Client" was defined as Lockton in the Consulting Agreement.

The trial court entered summary judgment in defendant's favor on Count I. The trial court concluded that the nonsolicitation clause in the Operating Agreement could not be enforced against defendant because 1) the terms of the Operating Agreement did not apply to defendant, and 2) JTL had no protectable interest that could be enforced against defendant. The trial court also concluded that the nonsolicitation clause in the Consulting Agreement could not be enforced against defendant because JTL had not terminated the Consulting Agreement with Lockton. The court subsequently awarded defendant $168,450.00 as attorney's fees and $9,099.03 in costs. The remaining counts were dismissed by the parties or by the trial court. Plaintiffs appeal from the entry of summary judgment on Count I and the award of attorney's fees and costs.

## DISCUSSION

On appeal, plaintiffs contend that the trial court erred in entering summary judgment because it misinterpreted the Operating Agreement and Consulting Agreement to find the nonsolicitation provisions unenforceable. We review this appeal from summary judgment *de novo*. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). When the underlying facts are not in question, disputes arising from the interpretation and application of contracts are matters of law for the court. *Howard v. Youngman*, 81 S.W.3d 101, 109 (Mo.App. 2002).

The party moving for summary judgment must establish that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. *ITT Commercial*, 854 S.W.2d at 387. When the movant is a defendant, a right to summary judgment can be established by showing (1) that facts exist which negate any one of plaintiff's elements, (2) that the plaintiff has not and will not be able to produce sufficient evidence for the trier of fact to find the existence of any one of the elements, or (3) that there is no genuine dispute as to the facts necessary to support defendant's properly pleaded affirmative defense. *Id.* at 381. If a defendant establishes any one of these, then the defendant is entitled to judgment as a matter of law. *Id.* We will affirm summary judgment if it is correct as a matter of law on any ground. *Id.* at 387.

I. *Application of Operating Agreement to Defendant*

█ We first consider plaintiffs' point in which they maintain that the trial court erred in concluding that the terms of the Operating Agreement were inapplicable to defendant. Plaintiffs assert that defendant expressly agreed to be bound by the Operating Agreement in the Additional Member Agreement. We agree.

JTL is a Delaware limited liability company (LLC). Under the Delaware LLC statute, DEL.CODE ANN. tit. vi, section 18–101—18–1109 (2005), an LLC's operating agreement may provide that a person shall be admitted as a member by executing a "writing evidencing the intent of such person to become a member," section 18–101(7)a.1, and a person may be admitted after the limited liability company is formed. Section 18–301(b).

Section 8.5 of the Operating Agreement allows a person to become an additional member after formation of JTL. The Additional Member Agreement recited:

> B. In order to become a member, Producer desires to become bound by the JTL Operating Agreement ("Operating Agreement") and the Consulting Agreement ("Consulting Agreement")

among JTL, St. Louis, and the members of JTL.

It contained as part of the agreement:

2. Producer agrees to be bound by all the terms and conditions of the Operating Agreement and Consulting Agreement, as a Class B Member of JTL, with a Basic Cost Plus Percentage, as defined in the Operating Agreement, of 10%.

Defendant executed the Additional Member Agreement. By doing so, he expressly agreed to be bound by the Operating Agreement.

This point is granted. However, this point does not establish an independent basis for reversal because the trial court also found that neither JTL nor Lockton could enforce the Operating Agreement, which findings plaintiffs challenge in the points that follow.

II. *Existence of a Protectable Interest Belonging to JTL*

We next consider the point in which plaintiffs assert that the trial court erred in concluding that the customer nonsolicitation clause in the Operating Agreement is not enforceable against defendant because JTL had no protectable interest that could be enforced against defendant. Plaintiffs argue that JTL did have a protectable interest in both customer contacts and goodwill derived from the efforts of defendant and the other JTL members that arose from JTL's contractual rights and obligations with Lockton.

■■■ Before we decide whether the trial court erred, we must first determine what state law governs. This point is addressed to the customer nonsolicitation clause in the Operating Agreement. That agreement contains a choice of law clause providing that Delaware law is to govern. However, both parties have cited only Missouri law in their arguments on the enforceability of the nonsolicitation clause.

Parties to a contract may waive the provisions of their contract by their conduct. *Pilla v. Estate of Pilla*, 689 S.W.2d 727, 730 (Mo.App.1985). We conclude that by not citing any Delaware law on customer nonsolicitation clauses, the parties have waived the Delaware choice of law clause in the Operating Agreement. *Watters v. Travel Guard Intern.*, 136 S.W.3d 100, 106 n. 4 (Mo.App.2004). Accordingly, we will analyze this point according to Missouri law and other consistent authority.

■■■ Restrictive covenants that limit individuals in the exercise or pursuit of their occupations, standing alone, are contracts in restraint of trade that are unlawful in this state. *Schmersahl, Treloar & Co., P.C. v. McHugh*, 28 S.W.3d 345, 348 (Mo.App.2000); *Renal Treatment Centers v. Braxton*, 945 S.W.2d 557, 563 (Mo.App. 1997). However, a covenant not to compete that forms part of a legitimate transaction is often described as an "ancillary restraint." *Renal Treatment*, 945 S.W.2d at 563. Such legitimate transactions or relationships include employment contracts, buy—sell contracts, partnership agreements, and independent contractor agreements. *Id.* at 563–64. They also include shareholder agreements in close corporations. *See Simons v. Fried*, 302 N.Y. 323, 98 N.E.2d 456 (1951); *Ladd v. Pittsburgh Consolidation Coal Co.*, 309 Ky. 405, 217 S.W.2d 807 (1949); *Irving Inv. Corp. v. Gordon*, 3 N.J. 217, 69 A.2d 725 (1949); *Volunteer Firemen's Ins. Services, Inc. v. CIGNA Property and Cas. Ins. Agency*, 693 A.2d 1330 (Pa.Super.Ct.1997). Further, "[t]here may be other situations in which a 'valid transaction or relationship would give a promisee legitimate interest sufficient to sustain a promise not to compete.'" *Renal Treatment*, 945 S.W.2d at 563 (quoting RESTATEMENT (SECOND) OF CONTRACTS section 188 comment e (1979)). A limited liability

company formed under section 18–101 et seq. of the Delaware code shares many similarities with partnerships and close corporations. *See Credentials Plus, LLC v. Calderone,* 230 F.Supp.2d 890, 899 (N.D.Ind.2002). An operating agreement between a limited liability company and its members would fall within the class of contracts or relationships that would give a limited liability company a legitimate interest sufficient to sustain a promise not to compete by a member. *See e.g., id.* at 896–97.

We next consider whether the interest sought to be enforced is protectable. The party seeking to enforce a non-competition clause must prove it has a protectable interest. *Renal Treatment,* 945 S.W.2d at 564. Customer contacts constitute a protectable interest. *Id.*

Customer contacts are essentially "the influence an employee [4] acquires over his employer's customers through personal contact." *Schmersahl,* 28 S.W.3d at 349 (quoting *Continental Research Corp. v. Scholz,* 595 S.W.2d 396, 400 (Mo.App. 1980)). In the sales industry, "customer contacts" are protected because "a customer's goodwill toward a company is often attached to the employer's individual sales representative, and the employer's product or service becomes associated in the customer's mind with that representative[,]" thus placing the employee "in a position to exert a special influence over the customer and entice that customer's business away from the employer." *Easy Returns Midwest, Inc. v. Schultz,* 964 S.W.2d 450, 453 (Mo.App.1998). The goodwill that develops between the sales representative and the company's customer is essential to the employer's success and is the reason the

employee is remunerated. *AEE–EMF, Inc. v. Passmore,* 906 S.W.2d 714, 720 (Mo.App.1995).

In the summary judgment record, JTL did not controvert the fact that JTL does not have any customers. However, JTL argues that its members have the type of contact with Lockton's customers that is protected and JTL's revenue is dependent on its members bringing customers to Lockton so that JTL, in turn, will be compensated by Lockton. The issue in this case is whether JTL has a protectable interest in its members' customer contacts that result in customer accounts that are owned by Lockton.

There is no question that JTL's members have a close and valuable contact with Lockton's customers. The Consulting Agreement requires that JTL be extensively involved with Lockton's customer accounts, including:

(a) Review all customer accounts of Client and advise Client as to the appropriate risk funding program for each customer.

(b) Assist Client in assembling proposals for risk funding programs to be presented to existing and potential customers.

(c) Take the necessary or desirable steps to maintain good working relationships between Client and its current customers.

\* \* \*

(e) Consult with employees of Client to assure the needed and appropriate level of service to Client's customer accounts.

Section 3.01 of the Consulting Agreement provides that maintaining and establishing

---

4. In these cases, the word "employee" encompasses members of a limited liability company.

relationships with Lockton's customer accounts is an essential part of JTL's business. Section 3.02 of the Consulting Agreement further provides that JTL's primary source of revenue is derived from the fees Lockton pays JTL, which are based on Lockton's gross revenues that result from JTL's members' services to Lockton.

 We agree that, had the insurance buyers been JTL's customers, this relationship could amount to a protectable interest. *See Steamatic of Kansas City, Inc. v. Rhea,* 763 S.W.2d 190, 193 (Mo.App. 1988). However, before an employer can claim a protectable interest in customer contacts, an employer must first have a stock of customers who regularly deal with the employer. *Kessler–Heasley Artificial Limb v. Kenney,* 90 S.W.3d 181, 186 (Mo. App.2002); *Empire Gas Corp. v. Graham,* 654 S.W.2d 329 (Mo.App.1983). In *Empire Gas,* the court adopted existing dictionary definitions of the word "customer," as someone who repeatedly has business dealings with a particular tradesman or business. *Id.* at 330–31. *See Kenney,* 90 S.W.3d at 186; *Silvers, Asher, Sher & McLaren v. Batchu,* 16 S.W.3d 340, 345 (Mo.App.2000); *Steamatic,* 763 S.W.2d at 192. "Unless the proponent of the restrictive covenant has a trade following, that is, a group of customers who regularly patronize the business of the particular employer, there can be no stock of customers and no protectable interest." *Steamatic,* 763 S.W.2d at 192.

In this case, JTL's business is not to sell insurance products directly to customers, but to obtain customers for Lockton. The nonsolicitation clause in the Operating Agreement provides, in part, that no member shall "call upon or solicit or in any way do business with any Customer Accounts owned by any Client or its Affiliates."

(LF 47) Section 2.1 defines "Customer Accounts":

> "Customer Accounts" shall mean the accounts of all current customers of each Client, and shall also include prospective customers of each Client, but only if a proposal has been made to, or an invitation to propose has been received by the Client from, such prospective customer.

The fact that JTL received a stream of revenue from Lockton for providing services to Lockton's customers does not give it a protectable interest in those customers. Lockton's customers paid Lockton for the insurance products provided by Lockton. Even though these payments determined the amounts Lockton would pay JTL, Lockton's customers were not JTL's customers, and JTL had no protectable interest in them.

JTL argues that if a sales representative simultaneously serves at the direction of two affiliated entities, either or both should be allowed to enforce a restrictive covenant, citing *Systematic Business Services v. Bratten,* 162 S.W.3d 41 (Mo.App. 2005). *Bratten* is not so broad. In *Bratten,* a parent company and its wholly-owned subsidiary jointly employed an employee pursuant to a contract containing a covenant not to compete and then jointly filed an action to enforce the covenant after the employee left his employment and began competing. The court of appeals analyzed the employment agreement between the subsidiary and the defendant, which explicitly referred to both the parent company and the subsidiary as the defendant's employers and also provided that the parent company pay a signing bonus, and held that the defendant was a joint employee. *Id.* at 48. The court found substantial evidence supported the trial court's findings that the parent company engaged in business through its subsidiary and that the parent company's and

the subsidiary's customers were the same. *Id.* at 51. The court found that the subsidiary had standing to enforce the restrictive covenant and thus, it did not have to reach the question of whether the parent company had standing. *Id.* at 52.

Under the undisputed facts, the insurance buyers were not JTL's customers, and JTL had no proprietary rights in Lockton's customers that it could protect. This point is denied.

### III. *Enforcement of Restrictive Covenants in Consulting Agreement*

In their third point, plaintiffs contend that the trial court erred in concluding that the nonsolicitation provision in the Operating Agreement was not enforceable because neither JTL nor Lockton had terminated that agreement. Plaintiffs argue that Section 7.03 of the Consulting Agreement controls solicitation of accounts after a member's interest in JTL is terminated.

Article V of the Consulting Agreement provides that the "provisions of Article VII shall control the solicitation of such accounts following the termination of this Agreement or a Member's interest in JTL." The only section of Article VII that imposes a restriction on solicitation of customer accounts is Section 7.03. However, Section 7.03 applies only if the Consulting Agreement is terminated by JTL or if it is terminated or breached by Lockton.

Although Article V provides that Article VII controls solicitation following either the termination of the agreement or a member's interest, Article VII does not contain a restrictive covenant applicable to the situation in which a member's interest has been terminated by JTL. When the language of a contract is plain, there can be no construction, because there is nothing to construe. *Mickelberry's Food Products Co. v. Haeussermann*, 247 S.W.2d 731, 738 (Mo.1952); *Nixon v. Life Investors Ins. Co. of America*, 675 S.W.2d 676,

680 (Mo.App.1984). We are governed by the plain language of the Consulting Agreement that provides that Article VII controls solicitation following termination. Since Article VII does not contain a restrictive covenant for the situation in which a member's interest has been terminated, there is no restriction on the solicitation of customer accounts in the Consulting Agreement. Point three is denied.

### IV. *Enforcement of Operating Agreement by Lockton*

For their fourth point, plaintiffs maintain that the trial court erred in entering summary judgment in defendant's favor because Lockton could enforce the nonsolicitation provision contained in Section 10.3 of the Operating Agreement. They argue that Lockton is a third-party beneficiary who had enforceable rights under the agreement.

A third-party beneficiary is one who is not a party to the contract, but who may be able to enforce the terms of the contract. *L.A.C. v. Ward Parkway Shopping Center Co.*, 75 S.W.3d 247, 260 (Mo. banc 2002). A third-party beneficiary can enforce the terms of the contract if the third party is a party for whose primary benefit the other parties contracted. *Id.* The question of intent is paramount to any analysis of third-party rights. *Terre Du Lac Ass'n. v. Terre Du Lac, Inc.*, 737 S.W.2d 206, 213 (Mo.App.1987). "The intention of the parties is to be gleaned from the four corners of the contract, and if uncertain or ambiguous, from the circumstances surrounding its execution." *Id.* "Third party beneficiary rights depend on, and are measured by, the terms of the contract between the promisor and the promisee." *Id.* Although it is not necessary that the third-party beneficiary's name appear in the contract, the terms of the contract must express "directly and

clearly an intent to benefit an identifiable person or class." *Id.* In order for the third party to be able to enforce the contract, the contract terms "must clearly express that the contracting parties intended the third party to ... have the right to maintain an action on the contract." *Laclede Inv. Corp. v. Kaiser,* 596 S.W.2d 36, 42 (Mo.App.1980). Moreover, "[t]he right of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself." *Id.* at 44.

There is no question that the Operating Agreement indicates that JTL and its members intended that Lockton, as client, would derive some benefits from the agreement. For example, in Section 6.4, JTL and its members agreed that each member would "do all things necessary to maintain, promote and improve the business of ... the Client," "devote full time and attention to the business of ... the appropriate Client," and "submit to such Client, solely and exclusively, all insurance related business" from customers.

The question, however, is whether the contracting parties intended that Lockton have the right to maintain an action on the contract. Section 12.6 provides that "[n]one of the provisions contained in this Agreement shall be for the benefit of or enforceable by any third parties...." Plaintiffs argue that "third parties" does not include Lockton, because Lockton is specifically identified as a "Client." We disagree with this reasoning.

Nothing in the Operating Agreement indicates that the benefits given Lockton include a right to enforce the contract. To the contrary, Section 12.13 allows attorney's fees to be awarded *only* if the agreement is enforced by JTL or a member of JTL. Although the Operating Agreement is clearly designed to protect "Client" accounts, it does not give Lockton any right to enforce the covenant not to compete between JTL and its members. Point four is denied.

## V. Other Breaches

In their fifth point, plaintiffs claim that the trial court erred in entering summary judgment on Count I because defendant's motion "failed to address their other breach of contract claims" contained in Count I. Defendant's motion for partial summary judgment sought judgment only on Count I. Plaintiffs contend that Count I also alleged other breaches: a breach of provisions prohibiting defendant from soliciting employees and other persons affiliated with plaintiffs, and a breach of contract for defendant's failure to give a 30–day written notice of termination and other wrongful pretermination conduct. We disagree that Count I contained other claims for relief.

Although Count I incorporated by reference an allegation that defendant had not given thirty days notice and alleged the existence of an agreement not to solicit employees, Count I only stated a claim for breach of the customer nonsolicitation clauses in the Consulting and Operating Agreements. It did not state a claim for relief based on lack of notice or solicitation of employees. The trial court did not err in entering summary judgment on Count I by limiting its decision to the alleged breach of the customer nonsolicitation clauses. Point five is denied.

## IV. Attorney's Fees and Costs

In their last point, plaintiffs contend that defendant is not entitled to attorney's fees and costs as the "prevailing party" under the terms of the Operating Agreement and Consulting Agreement because the trial court erred in entering summary judgment. Because we have found no error, this point is moot.

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY and BOOKER T. SHAW, JJ., concur.