# MARCH, 1936.

CORNELIA GROTE, ROBERT GROTE, MARGARET GROTE AND EDWARD GROTE, RESPONDENTS, v. MONWARD REALTY COMPANY AND FIDELITY AND CASUALTY COMPANY OF NEW YORK, APPELLANTS.—96 S. W. (2d) 660.

St. Louis Court of Appeals. Opinion filed September 15, 1936.

190

*George A. Hodgman* for appellants.

*Emmett Golden* and *Rene Lusser* for respondents.

SUTTON, C.—This is an action for the recovery of compensation and burial expenses under the Workmen's Compensation law, for the death of Ernest Grote, resulting from an accident which occurred while he was washing windows in the Boatmen's Bank Building in the City of St. Louis, on June 22, 1934. Plaintiffs are the widow and minor children of the deceased. Defendant Fidelity and Casualty Company of New York is the insurer of defendant Monward Realty Company. It is also the insurer of the Superior Construction Company.

The Workmen's Compensation Commission awarded plaintiffs $18 per week for 300 weeks as compensation and $150 for burial expenses. From the judgment of the circuit court affirming this award on appeal, defendants have appealed to this court.

The following facts were agreed upon by the parties at the hearing before the compensation commission:

Monward Realty Company holds title to, and operates in the City of St. Louis, premises occupying the south half of the west half of the city block bounded by Locust Street on the north, Fourth Street on the east, Olive Street on the south, and Broadway on the west, and Superior Construction Company likewise holds title to the north half of the west half of said city block.

Both companies are controlled by substantially the same interests.

As originally constructed, the Boatmen's Bank Building was erected to cover the property to which the Monward Realty Company held title, to-wit, the south half of the half block in question and at a subsequent date the Superior Construction Company erected a building covering the north half of said half block and adjoining the original Boatmen's Bank Building structure.

The building erected by the Superior Construction Company was so built that it might be added to the original Boatmen's Bank Building and long prior to the matters and things out of which this claim arises, the walls between the buildings had been opened, thus providing easy access between all the upper floors of the two buildings so that in effect they were as one, the tenants of the newer building at first using the elevators in the older building, but prior to the circumstances out of which this claim arises, the newer building was also provided with elevator service but at all times all the floors above the first floor in one building communicated with the same numbered floor in the old building.

There is a single executive management of the building. The single management controls both buildings, and all supplies and equipment are contracted for by it regardless of where the material is to be used, but there are separate accounts kept, one set for the Monward Realty Company and one set for the Superior Construction Company, and all expense items, including labor payroll, are proportioned between the two companies in suitable ratio and charged accordingly upon the books.

On or about May 28, 1930, one Stanley Laski made an agreement with the management to wash inside and outside windows of the Boatmen's Bank Building for the sum of $300 per month. The arrangement was that Laski was to wash the windows, furnishing such labor or helper as was necessary. Laski began the window washing about July 16, 1930. He employed deceased, Ernest Grote, to be his helper.

For convenience the $300 provided for by Laski's contract was paid on the payroll of the management of the Boatmen's Bank Building. The name "Boatmen's Bank Building" commonly is applied to both of the buildings referred to above, that is to say, the entire structure is referred to as the Boatmen's Bank Building and there is no separate name given to the building owned by the Superior Construction Company.

The amount allotted to deceased, Ernest Grote, for his services because of the Laski contract was $58.50 semimonthly. He drew $39 semimonthly of this on the payroll of the Monward Realty Company and received a separate check for that amount. He would also receive for the same period a check for $19.50 on the payroll

of the Superior Construction Company, in fact there was a joint payroll but separate checks would be issued by each company for its proportionate part of the charge for window washing.,

Such materials as were needed for the window washing work were provided by the management of the buildings.

Because of the great number of windows in these two structures, deceased, and Laski were busy at window washing practically every day, and although the money was paid for Laski's account by way of the payroll of the building management, there was no change whatsoever in the relations between deceased and Laski.

The building management did, on occasion, suggest that they would like to have certain windows washed at a certain time and these requests would be complied with but in the doing of the window washing work, the details were not under the control of the building management or its agents and deceased and his employer Laski did the work in their own way with the building company looking to them for the result desired without attempting to control the means or method by which the desired result was to be accomplished.

The accidental fall which resulted in the death of deceased occurred while he was working on windows in that part of the building owned by Monward Realty Company.

The commission based the amount of its award for compensation upon the employee's annual earnings received from both the Monward Realty Company and the Superior Construction Company. The defendants complain of this as error, insisting that the award should be based solely upon the employee's annual earnings received from the Monward Realty Company on whose premises he was working at the time of the accident which caused his death.

We are thus confronted with a question of first impression in this State.

Section 3307, R. S. 1929, Mo. St. Ann., sec. 3307, p. 8242, provides as follows:

"If the injury or death occurs while the employee is in the joint service of two or more employers, their liability shall be joint and several, and the employee may hold any or all of such employers. As between themselves such employers shall have contribution from each other in the proportion of their several liability for the wages of such employee, but nothing in this chapter shall prevent such employers from making a different distribution of their proportionate contributions as between themselves."

We regard this section as applicable here. Obviously the employee, at the time he met his death, was in the joint service of the Monward Realty Company and the Superior Construction Company, within the meaning of this section. The two structures composing the Boatmen's Bank Building, though originally separate structures,

194

and still remain under separate ownership, were used at the time of the accident as one building under one management, and both the proprietary companies were controlled by substantially the same interests. The contract of employment was made with the one controlling management at a fixed monthly wage to be paid for washing the windows of the Boatmen's Bank Building without any apportionment of the wage between the two companies according to the amount of work done or to be done on the premises of each company. It is true that the monthly wage paid the deceased for his services was paid by separate checks, one drawn on the payroll of the Monward Realty Company and the other on the payroll of the Superior Construction Company, but this was done evidently by a bookkeeping arrangement between the companies adopted as a convenient method of apportioning and keeping account of the expenses of the window washing between themselves in accordance with their respective interests in the common enterprise. There could hardly be a question that the compensation commission properly based its award upon the employee's annual earnings received by him from both companies. This view accords with the manifest spirit and purpose of the compensation law and with the authorities in other jurisdictions as well. [Sargeant v. A. B. Knowlson Co., 224 Mich. 686, 1. c. 689; Page Engineering Co. v. Industrial Commission, 322 Ill. 60; Gillen v. Ocean Accident and Guaranty Corporation, 215 Mass. 96; Quebec Case (Mass.), 141 N. E. 582, 1. c. 583; Western Metal Supply Co. v. Pillsbury, 172 Cal. 407; In re Howard (Ind.), 125 N. E. 215.]

Defendants urge in this court for the first time the unconstitutionality of section 3307. No such question was raised at any stage of the proceeding below. This court is not therefore deprived of jurisdiction. [Wabash R. Co. v. Flannigan, 218 Mo. 566, 117 S. W. 722; Dubowsky v. Binggeli, 258 Mo. 197; 167 S. W. 999; Littlefield v. Littlefield, 272 Mo. 163, 197 S. W. 1057.]

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.