**Gerald R. WATKINS,
Employee/Respondent,**

v.

**BI–STATE DEVELOPMENT AGENCY,
Employer/Respondent,**

**Kloster Construction Company, and
Commercial Union, Employer/Insurer/Appellant,**

**and**

**City of St. Louis, Employer/Appellant.**

No. 68906.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 4, 1996.

Richard A. Day, Kortenhof & Ely, P.C., St. Louis, for Appellant, Employer/Insurer, Kloster Construction Company and Commercial Union Insurance Company.

Tyrone A. Taborn, City Counselor, Robert L. Lyng, Asst. City Counselor, St. Louis, for Appellant City of St. Louis.

Rick Berry, Law Offices of Rick Berry, P.C., St. Louis, for Claimant Respondent Gerald R. Watkins.

Carl Kessinger, Bi–State Development Agency, St. Louis, for Employer/Respondent Bi–State Development Agency.

GERALD M. SMITH, Presiding Judge.

Kloster Construction Company (Kloster) and the City of St. Louis (City) appeal from a Labor and Industrial Relations Commission award holding each of them liable to claimant Gerald Watkins (Watkins) for workers' compensation benefits. The Commission affirmed a decision by the Administrative Law Judge (ALJ) finding that Watkins was an employee of both Kloster and the City. The ALJ also found that Watkins was *not* an employee of Bi–State Development Agency (Bi–State). We affirm.[1]

Viewed in the light most favorable to the Commission's award, the facts are as follows. Bi–State is the owner of the Metrolink light

---

1. Bi–State submitted a brief outlining the reasons why it should not be liable as an employer. However, none of the parties have challenged the Commission's finding with regard to Bi–State. The issue has not been appealed and we need not address it.

rail system, and was the general contractor of the Metrolink construction project. Part of the Metrolink system is constructed on Lambert International Airport property. BiState subcontracted with Kloster to construct the portion of the Metrolink located at the airport. The airport is under the control of the Airport Authority, a political subdivision of the City. Until his injury, Watkins was a full-time employee of the airport police department, also under the control of the Airport Authority.

Bi–State's construction contract with Kloster provided that Kloster was responsible for formulating and carrying out a traffic control plan to deal with congestion foreseen as a result of Metrolink construction at the airport. Kloster submitted a plan, approved by the Airport Authority, which consisted of closing two inner lanes on Lambert Boulevard, erecting signs with traffic directions, placing orange traffic barrels to route traffic, etc. Although this plan was implemented, traffic began to back up onto Interstate 70 during peak traffic hours.

The Airport Authority engineer, Mr. Kuelker, told Bi–State that the traffic control measures were insufficient. The Authority threatened to suspend all construction until traffic disruptions were ameliorated. Bi–State, Kloster and Mr. Kuelker discussed possible alternatives and the parties decided to examine the feasibility of using an electric traffic signal. However, this course of conduct was soon rejected, and the parties ultimately decided to use human traffic control officers. Kloster investigated hiring a private security firm, however, the Airport Authority preferred that airport police officers be used to direct traffic. The Authority wanted the traffic control officers to have "venue" to enforce applicable traffic ordinances, to issue summons and to effectuate arrest if required.

Airport police commanders suggested to Kloster that the officers be paid $15.00/hour, as this was the "going rate" for secondary employment of uniformed police officers. A notice was placed on the airport police bulletin board seeking officers to work the traffic detail. Several different officers had, at various times, the responsibility of scheduling the officers who wished to work traffic detail. The Authority told Bi–State where and when traffic control was needed. Bi–State would then convey this information to Kloster. Kloster would then tell the scheduling airport police officer, who would give instructions to the officers on the street directing traffic. The Authority had the discretion to approve an officer's request to work the traffic detail, and had the power to remove an officer from the detail.

The officers directing traffic wore their airport police uniforms and used equipment provided by the police department. While working, they were subject to the airport police disciplinary rules and regulations. The officers were instructed by Kloster to give expedited preference in and out of the construction site to Kloster and other construction-related trucks. If Bi–State or Kloster were unhappy with any officer's performance, they conveyed their concerns to the scheduling officer, who in turn informed the officer on the street.

The officers were paid by Kloster. The scheduling officer would convey to Kloster the names of officers working and hours worked on the project in a particular week. Kloster would pay each officer in cash in separate envelopes left at the airport police office. Eventually, Kloster was reimbursed by Bi–State for this extra traffic control cost as an addition to the contract, and a 5% administration cost was also recovered. The officers did not interview with Kloster or fill out employment applications or W–2 forms. At the end of the year, Kloster provided each officer with an IRS Form 1099 in order to report additional income.

Watkins was one of the airport police officers who took secondary employment directing traffic. His work was scheduled by Officer Cheney of the airport police, and Watkins communicated any problems with his schedule directly to Cheney. Watkins was working traffic detail when he was struck by a rental car. He sustained severe head injuries.

■■■ Initially, it must be noted that the award of the Commission was only "temporary or partial." Ordinarily, no appeal lies

from a temporary or partial award. *Stuffle-bean v. Crete Carrier Corporation*, 895 S.W.2d 115 (Mo.App.1995)[1–4]. However, appellate review on the issue of liability in a workers' compensation case is permissible although an award is denominated "temporary or partial." *Id.* (citing *Woodburn v. May Distributing Co.*, 815 S.W.2d 477 (Mo. App.1991)[1]). Since liability is the only issue in this appeal, review is possible even though the award was temporary.

■ On all issues, our review is limited to a determination of whether the Commission's award is supported by competent and substantial evidence of the whole record. *Hunsperger v. Poole Truck Lines, Inc.*, 886 S.W.2d 656 (Mo.App.1994)[1, 2]; *Hutchison v. St. Louis Altenheim*, 858 S.W.2d 304 (Mo. App.1993)[1, 2]. All evidence and inferences are viewed in a light most favorable to the award, and the award will be set aside only if the Commission's findings are contrary to the overwhelming weight of the evidence. *Hutchison, supra.* However, a finding that a workers' compensation claimant is or is not an "employee" represents application of law, as distinguished from finding of fact, and is subject to correction by the court of appeals. *White v. Dallas & Mavis Forwarding Co.*, 857 S.W.2d 278 (Mo.App.1993)[1, 2]; *Gaston v. J.H. Ware Trucking Inc.*, 849 S.W.2d 70 (Mo.App.1993)[2].

■ No correction is needed here. Missouri Workers' Compensation Law defines an "employee" as a "person in the service of any employer ... under any contract of hire, express or implied, oral or written". § 287.020.1 RSMo 1994. The pivotal question in determining the existence of an employer-employee relationship is whether the employer had the right to control the means and manner of the service, as distinguished from controlling the ultimate results of the service. *Hutchison, supra* (quoting *Howard v. Winebrenner*, 499 S.W.2d 389 (Mo.1973)[1, 2]). Several factors must be examined to determine if a right to control existed. *Id.* They are: (1) the extent of control, (2) the actual exercise of control, (3) the duration of the employment, (4) the right to discharge, (5) the method of payment, (6) the degree to which the alleged employer furnished equipment, (7) the extent to which the work is the regular business of the alleged employer, and (8) the employment contract. *Id.* No one of these factors is dispositive, but each is relevant to the issue. *Id.*

■ The City and Kloster each controlled certain details. With regard to the City, although the officers directed traffic without too much supervision and control, Watkins was trained to perform the duties of traffic control as part of his initial training as an airport police officer. Traffic control was one of his regular duties. Further, he was under the disciplinary authority of the airport police and was wearing an airport police uniform and using police equipment at the time of the accident. The Airport Authority also gave certain commands as to where and when traffic control was needed.

With regard to Kloster, Kloster also gave certain commands about where and when control was needed. Kloster directed the officers to actually be on the street controlling traffic rather than sitting in their cars. Kloster directed the officers to make sure construction vehicles were given preferential treatment at the project site and most importantly, Kloster paid the officers.

■ When the factors of control do not clearly demonstrate the employer's actual or right to control, the "relative nature of the work test" determines employment status. *Gaston v. J.H. Ware Trucking Inc.* 849 S.W.2d 70 (Mo.App.1993)[3–6]. Under the "relative nature of the work test", the inquiry turns to the economic and functional relationship between the nature of the work and the operation of the business served. The inquiry, moreover, tends away from technical common law definitions to the public purpose of the scheme for workers' compensation. *Id.*, (quoting *Ceradsky v. Mid–Am. Dairymen, Inc.*, 583 S.W.2d 193 (Mo.App.1979)[3]).

The ALJ and the Commission found an economic and functional relationship between Watkins and both the City and Kloster. We agree. With regard to the City, one of the prime duties of the airport police was to control traffic into and out of the airport. Watkins and the other officers performed traffic control at the Metrolink construction

site, yet they were paid by Kloster. Thus, the city benefitted both economically and functionally from having traffic control performed by Watkins.

Likewise, Kloster benefitted economically and functionally, because Kloster had a responsibility to perform the extra traffic control connected with the Lambert Metrolink project under its contract with Bi–State. Kloster paid the officers less than they would have received had they been working overtime for the City. Kloster then billed Bi–State for the provision of those services and received a 5% administrative fee.

Both Kloster and the City argue that the other exercised more control over Mr. Watkins and that the other benefitted more from his services. Although the City did exercise control over more of the details of the work than Kloster, the fact remains that Kloster was responsible for traffic concerns under its contract to build the Metrolink and Kloster paid the officers. We find substantial and competent evidence in the record to support the Commission's finding that both Kloster and the City were Watkins' employers.

The decision of the Commission is affirmed.

GARY M. GAERTNER and RHODES RUSSELL, JJ., concur.