Brenda Kay LEACH, Marissa Renee Leach, and Matthew Leach, Appellants–Respondents,

v.

BOARD OF POLICE COMMISSIONERS OF KANSAS CITY, Respondent–Appellant,

and

Westport Security Association and State Treasurer Nancy Farmer, Respondents.

Nos. WD 61913, WD 61914.

Missouri Court of Appeals, Western District.

Nov. 4, 2003.

Elaine Marie Eppright, Kansas City, for Appellant–Respondent.

Daniel Joseph Haus, Kansas City, for Respondent–Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Tamara J. Anfang and Shelly Naughtin, Office of Attorney General, Kansas City, and Mark Edward Kelly, Liberty, for Respondent.

PAUL M. SPINDEN, Presiding Judge.

Although James Leach was working jointly for two employers as a police officer and a security officer when he was killed, his dependents want to collect their workers' compensation benefits from only one of the employers. They contend that they are entitled to do so because joint employers are jointly and severally liable and because they will lose the full benefit of Leach's pension if they collect their workers' compensation benefits from the Board of Police Commissioners of Kansas City. The Labor and Industrial Relations Commission erred in deciding that the dependents could not make the election. We, therefore, reverse the commission's decision.

Because Westport Security Association was not insured against workers' compensation claims, allowing Leach's dependents to recover from only Westport Security will result in the public's paying the claim through the Second Injury Fund.[1] State Treasurer Nancy Farmer, whose duties include overseeing the fund, asserts that obligating the fund to pay when the Board of Police Commissioners was self-insured and able to pay the claim is contrary to the General Assembly's intention for the fund. This is a central issue in this case.

Leach's children and others not party to this workers' compensation claim sued Westport Security for their damages arising from Leach's death. He died on May 2, 1992, while working as a security officer in Kansas City's Westport district. A car operated by a drunk driver crashed through barricades and hit him. Leach's dependents alleged that Leach's death resulted from Westport Security's negligence. They settled the suit for $25,000. Leach's dependents received Leach's pension and funeral benefit from Kansas City's police retirement system.

Leach's wife, Brenda, filed a claim for workers' compensation, seeking to recover death benefits on behalf of herself and her children. The commission's administrative law judge, Mark Siedlik, decided that Leach was working only for Westport Security when he was killed and, because Westport Security was not insured, the Second Injury Fund was liable. The fund and Westport Security appealed to the commission. They contended that Westport Security and the board jointly employed Leach. The commission agreed and modified the award accordingly. The commission decided that, because the board was self-insured, the fund was not obligated to pay the claim.

Leach's dependents and the board appeal the commission's decision. The dependents contend that § 287.130[2] entitles

---

**1.** Section 287.220.5, RSMo 2000, says, "If an employer fails to insure or self-insure as required in section 287.280, funds from the second injury fund may be withdrawn to cover the fair, reasonable, and necessary expenses to cure and relieve the effects of the injury or disability of an injured employee in the employ of an uninsured employer, or in the case of death of an employee in the employ of an uninsured employer, funds from the second injury fund may be withdrawn to cover fair, reasonable, and necessary expenses in the manner required in sections 287.240 and 287.241."

**2.** All citations to statutes refer to the 2000 Revised Statutes. Section 287.130 says, "If

them to elect to recover from either Westport Security or the board. The board does not address the issue of whether or not the dependents have a right to elect between employers but argues more generally that the fund is liable when liability is joint and several and one of the employers is uninsured.

■ Before reaching the issues that the parties raise, we consider whether Leach was a joint employee of Westport Security and the board when he suffered his fatal injuries or was working only for Westport Security. None of the parties raise the issue, but we consider it, *sua sponte*, because, if the commission's conclusion that Leach was jointly employed is wrong, the issue presented by the dependents and the board is moot.

■ Control is the pivotal factor in distinguishing between employees and other types of workers. If the employer has a right to control the means and manner of a person's service—as opposed to controlling only the results of that service—the person is an employee rather than an independent contractor. *Seaton v. Cabool Lease, Inc.*, 7 S.W.3d 501, 505 (Mo.App. 1999). The factors to consider in determining whether or not the requisite right to control exists are: "(1) the extent of control, (2) the actual exercise of control, (3) the duration of the employment, (4) the right to discharge, (5) the method of pay-

ment, (6) the degree to which the alleged employer furnished equipment, (7) the extent to which the work is the regular business of the employer, and (8) the employment contract." *Phillips v. Par Electrical Contractors*, 92 S.W.3d 278, 282 (Mo.App. 2002); *State v. Turner*, 952 S.W.2d 354, 357 (Mo.App.1997). In cases when these factors do not clearly determine the issue, Missouri's courts have applied the "relative nature of the work" test. This test, recognized in *Ceradsky v. Mid–America Dairymen, Inc.*, 583 S.W.2d 193 (Mo.App. 1979), shifts the focus from the right to control to the economic and functional relationship between the nature of the work and a business' operation. It considers how much skill that a claimant's work requires, how much of a separate calling or enterprise it is, and to what extent the job might be expected to carry its own accident burden. It also focuses on the relation of the job to the employer's business and determines whether the job being performed is continuous or intermittent and whether its duration amounts to the hiring of continuous services rather than a contract for the completion of a particular job. *Phillips*, 92 S.W.3d at 283; *Turner*, 952 S.W.2d at 358–59.[3]

The commission applied both tests to determine that Leach was jointly employed by Westport Security and the

the injury or death occurs while the employee is in the joint service of two or more employers, their liability shall be joint and several, and the employee may hold any or all of such employers. As between themselves such employers shall have contribution from each other in the proportion of their several liability for the wages of such employee but nothing in this chapter shall prevent such employers from making a different distribution of their proportionate contributions as between themselves."

3. We question whether Ceradsky established a new test or merely used new terminology to emphasize the need to weigh multiple factors when the right to control is not obvious. This is because the relative nature of the work test is subsumed within several of the factors of the right to control test, most notably the duration of the employment, the extent to which the work is in the employer's regular business, and the employment contract. Because it makes no difference to this appeal, we do not determine what role the "relative nature of the work" test serves in determining whether or not a person is an employee.

board.[4] The commission, however, misapplied the relative nature of the work test by focusing on the benefit of Leach's services to Westport Security and the board as being sufficient to establish joint employment. The commission said, "Because the Board benefited economically and functionally from its decision to allow [Leach] to serve in the capacity as a [Westport Security] security officer during his off-duty time, the Board shares liability for compensating [Leach's] dependents for his death arising out of and in the course of his work as a [Westport Security] security officer."

The commission relied on *Watkins v. Bi–State Development Agency*, 924 S.W.2d 18 (Mo.App.1996), to reach this conclusion, but it read *Watkins* too narrowly. In that case, a car hit a police officer while he was off duty and working for a construction company controlling traffic around a construction area. The court focused on the benefit of the officer's work that both employers gained and concluded that the employers jointly employed the officer. *Id.* at 21–22. But that focus should not mislead. Although a joint benefit often will flow to both employers from an employee's joint service as it did in *Watkins*, it will not always. The benefit both employers enjoyed in *Watkins*, although not highlighted in the court's opinion, resulted from the officer's jointly serving both employers. The construction company hired the officer to direct traffic, but he was also at the construction area to perform his functions as a police officer, which included enforcing traffic ordinances, issuing summonses, and effecting arrests if necessary. *Id.* at 20. The city would have benefited even had the off-duty officer done nothing but control traffic, but this function did not require a police officer.

█ The joint benefit—the worker's merely doing something that benefits both employers—is not the key factor in determining whether or not the officer was jointly employed. Instead, it is that his employers enjoyed the benefit resulting from his "joint service"—that is, his doing both employers' work. The joint service in *Watkins* was traffic control and law enforcement.

█ That the focus should be on service rendered rather than benefit conferred is reiterated in the definition of joint employment. Joint employment occurs when an employee, under contract with two or more employers and under their simultaneous control, performs for each employer services that are the same or closely related. *Patton v. Patton*, 308 S.W.2d 739, 748 (Mo.1958); *Shurvington v. Cavender Drywall*, 36 S.W.3d 432, 436–37 (Mo.App.2001); *Stone v. Heisten*, 777 S.W.2d 664, 667 (Mo.App.1989). The courts deem the employee to be jointly employed when the employee is hurt or killed while working within the scope and course of his service to the employers. *See, e.g., Equity Mutual Insurance Company v. Kroger Grocery and Baking Company*, 238 Mo.App. 4, 175 S.W.2d 153, 158–61 (1943), overruled in part on other grounds, *Hammons v. Ehney*, 924 S.W.2d 843, 847 (Mo. banc 1996); *Schultz v. Moer-*

---

**4.** Although we strongly doubt the commission's decision that Leach was Westport Security's employee rather than its independent contractor, the distinction has no significance in determining the commission's jurisdiction. The General Assembly has provided circumstances under which an independent contractor will be regarded as a statutory employee for purposes of falling within the purview of the Workers' Compensation Law. Section 287.040.1; *Bass v. Nat'l Super Mkts., Inc.*, 911 S.W.2d 617, 619–20 (Mo. banc 1995), *cert. denied*, 517 U.S. 1208, 116 S.Ct. 1825, 134 L.Ed.2d 930 (1996); *McGuire v. Tenneco, Inc.*, 756 S.W.2d 532, 534 (Mo. banc 1988).

*schel Products Company,* 142 S.W.2d 106, 107–09 (Mo.App.1940); and *Grote v. Monward Realty Company,* 232 Mo.App. 189, 96 S.W.2d 660, 661–62 (1936).

■ Although the commission erred in applying the relative nature of the work test, it reached the correct result. We concur that Leach was jointly serving Westport Security and the board when he suffered his fatal injuries. Leach was providing actual police service to the board while he was working for Westport Security. His work for Westport Security was similar and, in some instances, identical to his work as a police officer. Off-duty officers working for Westport Security served the board by issuing citations and summonses on books provided by the board, making arrests, and responding to calls directly from police dispatch. It does not matter that Leach was "off-duty" in a loose sense of the term. An off-duty officer who is injured or killed while performing the duties of a police officer may still be protected by workers' compensation. *Mann v. City of Pacific,* 860 S.W.2d 12, 13–17 (Mo.App.1993); *Jordan v. St. Louis County Police Department,* 699 S.W.2d 124, 125–27 (Mo.App.1985).[5]

■ We now consider the dependents' contention that they are entitled to elect between the board and Westport Security in recovering their workers' compensation benefits. We also address their contention that by electing Westport Security, which was uninsured, it can hold the Second Injury Fund liable even though the board is self-insured. Resolution of these issues requires reconciliation of §§ 287.130 and 287.220.5.

The General Assembly has mandated that workers' compensation law be broadly and liberally construed. Section 287.800, RSMo; *Farmer–Cummings v. Future Foam, Inc.,* 44 S.W.3d 830, 835 (Mo.App. 2001). The General Assembly addressed joint and several liability in § 287.130:

> If the injury or death occurs while the employee is in the joint service of two or more employers, their liability shall be joint and several, and the employee may hold any or all of such employers. As between themselves such employers shall have contribution from each other in the proportion of their several liability for the wages of such employee. . . .

In this statute, the General Assembly articulated that the employers' liability is joint and several and that the employee has the option of picking which of them that he will hold liable for his compensation. Rather than limiting an employee's recovery to a particular employer, the General Assembly permitted the employer or employers from whom he takes recovery to proceed against the other employers in a subsequent action for contribution. *See, e.g., Schultz,* 142 S.W.2d at 108, and *Equity Mutual Insurance Company,* 175

---

5. Leach's case is unique from typical cases in which the courts have deemed an off-duty officer to be entitled to workers' compensation in that he was not making an arrest, issuing a citation, or doing something that was clearly an exclusive police function when he was killed. This, however, is not significant because Leach was serving the board while working for Westport Security even though he was not unceasingly doing its work or doing it when the car hit him. *See Equity Mut. Ins. Co. v. Kroger Grocery and Baking Co.,* 238 Mo.App. 4, 175 S.W.2d 153 (1943), overruled in part on other grounds, *Hammons v. Ehney,* 924 S.W.2d 843 (Mo. banc 1996); *Schultz v. Moerschel Prods. Co.,* 142 S.W.2d 106 (Mo.App.1940) (seven employers jointly liable when night watchman hired by each to provide security was injured while securing one employer's building); and *Grote v. Monward Realty Co.,* 232 Mo.App. 189, 96 S.W.2d 660 (1936) (two employers jointly liable to compensate for death of window washer although he was cleaning one employer's windows when he died).

S.W.2d at 155. "The statute gives claimant the exclusive right to determine whom he will seek to hold; and it gives employers the right to seek equitable contribution from 'each other.' " *Schultz*, 142 S.W.2d at 108.

Leach's dependents want to take recovery from Westport Security, which was not insured. Insurance is not a prerequisite to the right to recover against an employer under § 287.130. Indeed, the General Assembly contemplated that an employer would not carry insurance or would not self-insure, so it provided in § 287.220.5:

> If an employer fails to insure or self-insure as required in section 287.280, ... in the case of death of an employee in the employ of an uninsured employer, funds from the second injury fund may be withdrawn to cover fair, reasonable, and necessary expenses in the manner required in sections 287.240 and 287.241 ....

Despite these statutes, Farmer argues that the Second Injury Fund should not be required to compensate an employee when one of the joint employers is insured or self-insured and can bear the liability. Given the plain and unequivocal language of §§ 287.130 and 287.220.5, we reject Farmer's contention for two reasons. First, it requires a strained construction of § 287.130, which establishes joint and several liability and allows recovery against "any" employer without regard for whether or not it has insurance. Second, to protect Westport Security from liability solely because it chose not to insure or self-insure would deprive Leach's dependents of additional recovery that they would otherwise have and would penalize them for Westport Security's not fulfilling its obligations under the workers' compensation law.

We agree with Farmer that the fund's purpose is not to hold the balance of joint employers harmless when one of them chooses not to insure, but we reject the idea that allowing these dependents to elect among joint employers in making their claim does that. The General Assembly has provided several ways to compel a joint employer who has not insured itself to bear its share of liability. First, in § 287.220.5, it authorized the Attorney General to sue the employer. Second, in § 287.128.5, it made failure to insure a criminal offense and mandated a minimum and non-discretionary penalty of $25,000. *State ex rel. Nixon v. Jamison*, 103 S.W.3d 836, 838 (Mo.App.2003). Third, the second injury fund likely is entitled to seek contribution.

Although § 287.130 entitles only employers to seek contribution, the Second Injury Fund may still enjoy a right of contribution. We do not decide the issue in this case because it is not before us, but we give it some consideration to address Farmer's concern that requiring the fund to pay when the board is self-insured and is able to pay thwarts the General Assembly's intent.

■ Arguably, the fund does enjoy a right of contribution. Case law holding that § 287.130 permits an insurer who pays compensation on behalf of its insured to seek contribution suggests that the fund may enjoy the same right. *See, e.g., Equity Mutual Insurance Company*, 175 S.W.2d at 155–56 (interpreting statutory predecessor to § 287.130, RSMo, and allowing insurer to seek contribution from jointly liable employers); *Hill v. 24th Judicial Circuit*, 765 S.W.2d 329, 331 (Mo. App.1989). Moreover, although Westport Security and the board remain primarily liable for compensating Leach's dependents, the General Assembly assigned the fund a role that is analogous to a guarantor of an uninsured employer's obligations to his employees. In cases in which an

employer held for compensation does not fulfill its obligations, the Second Injury Fund, being secondarily liable, must undertake the obligation. When one pays a debt for a party bearing primary liability, equity typically recognizes a right of contribution that is separate from, and is not precluded by, a statutory right to contribution. An equitable right to contribution among co-debtors existed before the General Assembly provided a statutory right to contribution, and the General Assembly did not extinguish the equitable right. *Hammons v. Ehney*, 924 S.W.2d 843, 846–48 (Mo. banc 1996). We find nothing indicating that the right to contribution created by § 287.130 nullified an equitable right to seek contribution from an employer in a workers' compensation action even though Chapter 287 is exclusive and supplants the common law's grant to third parties the right to seek, and an employers' liability for, contribution in tort actions. *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489, 490–91 (Mo. banc 1979); *Sweet v. Herman Brothers, Inc.*, 688 S.W.2d 31, 32–33 (Mo. App.1985).

We repeat, however, for the sake of clarity that we are not deciding this issue because it is not before us. We merely consider it in response to Farmer's contention that the General Assembly intended for the insured joint employer to pay.

▆ Farmer also asserts that allowing Leach's dependents to recover from the fund would grant them a windfall because they would collect workers' compensation benefits and Leach's pension. She argues that taking money from the fund to pay for expenses already covered by Leach's pension benefits would be unfair. We disagree.

The fund refers us to *Phillips v. Par Electrical Contractors*, 92 S.W.3d 278 (Mo. App.2002), and *Mann v. Varney Construc-*

*tion*, 23 S.W.3d 231 (Mo.App.2000). In both cases, employees attempted to collect from the Second Injury Fund after they were injured while performing their employment duties. In *Phillips*, the employer's automobile liability insurer paid the claimant's medical expenses, but the employee still sought to collect again from the fund. In *Mann*, Medicaid paid the claimant's medical expenses and, although the employee had to reimburse $19,547.50 to Medicaid, he sought to recover $130,000 from the fund. The courts did not permit either claimant to recover the amount he sought from the fund. This is because § 287.220.5 provides that the fund is liable to pay only "the fair, reasonable, and necessary expenses to cure and relieve the effects of the injury or disability of an injured employee in the employ of an uninsured employer." In other words, the General Assembly has required the fund to compensate a claimant for his actual expenses. Although § 287.270 provides that an employee's compensation from another source is not to be considered in a determining the compensation due under the workers' compensation law, both courts concluded that this provision did not expand the fund's liability beyond that specified in § 287.220.5.

*Phillips* and *Mann* are not applicable to the claim of Leach's dependents because, unlike the claimants in those cases, Leach lost his life. When an employee dies while performing his employment duties, the "expenses" that the Second Injury Fund must pay include, not only actual expenses, but also weekly benefits to his dependents. Section 287.220.5 says that the fund is liable to pay "fair, reasonable, and necessary expenses in the manner required in sections 287.240 and 287.241." Those expenses include reasonable burial expenses and a death benefit that provides weekly compensation based on the deceased em-

ployee's earnings. Section 287.240(1) and (2).

In § 287.270, the General Assembly said, "No savings or insurance of the injured employee, nor any benefits derived from any other source than the employer or the employer's insurer for liability under this chapter, shall be considered in determining the compensation due hereunder[.]" The Police Retirement System of Kansas City is a source other than the Board of Police Commissioners or the board's insurer for liability under Chapter 287. The retirement system and the board are separate legal entities. Sections 84.350 and 86.373. Not only does § 287.270 not expand the fund's liability under § 287.220.5—*Phillips*, 92 S.W.3d at 287–88; *Mann*, 23 S.W.3d at 233–34—it also does not shrink the fund's liability to compensate the dependents of a deceased employee with benefits that the General Assembly has determined shall be awarded. In construing the General Assembly's legislative acts, we consider them as a whole, including all related clauses, and attempt to harmonize all of their provisions. *Hagely v. Board of Education of Webster Groves School District*, 841 S.W.2d 663, 667 (Mo. banc 1992); *Thoroughbred Ford, Inc. v. Ford Motor Company*, 908 S.W.2d 719, 729 (Mo.App.1995).

We understand Farmer's concern that Leach's dependents appear to be gaining a windfall by being allowed to collect their claim from the fund. But we do not agree that it is truly a windfall. It is nothing more than the compensation that the General Assembly has seen fit to allow. Not only is the commission not to consider the pension benefits in determining the value of a workers' compensation award, § 86.460.1 suggests that the General Assembly anticipated circumstances in which a police officer would suffer a loss that would entitle him or his dependents to collect pension benefits and a worker's compensation award without an offset. The statute says:

> Any periodic payment, excluding payments for medical treatment, which may be paid or payable by the cities under the provisions of any workers' compensation or similar law to a member or to the dependents of a member on account of any disability or death shall be offset against any benefits payable to the recipient of the workers' compensation payments from funds provided by the cities under the provisions of sections 86.370 to 86.497 on account of the same disability or death[.]

By declaring that only workers' compensation benefits paid or payable by a city are offset against the pension, the General Assembly mandated that a city's liability to a member of its police retirement system or his dependents is limited. If a member of the police retirement system has a second job and is injured or killed, making him or his dependents eligible to receive his pension and workers' compensation, § 86.460.1 would not require an offset when the workers' compensation award is paid by a source other than city funds. The General Assembly intended, therefore, to create circumstances in which § 86.460.1 would not prohibit recovery of both.

We, therefore, do not view § 86.460.1 as establishing a cap on what an officer's injuries or life are worth, but on what a particular city's liability for that loss will be. Were it any other way, the General Assembly would not have limited the offset to workers' compensation awards being paid by the city or would have in some other manner indicated that an injured worker may not collect both.

Had Westport Security been insured, Leach's dependents could have collected the workers' compensation award from it, and left it to Westport Security to deter-

mine whether or not to seek contribution from the board. Penalizing Leach's dependents by denying them recovery that they would otherwise have but for Westport Security's decision not to fulfill its legal obligations seems unjust. Punishing a claimant for an employer's failure to insure thwarts the General Assembly's purpose in establishing the Second Injury Fund, and it ignores the legislature's mandate to construe workers' compensation statutes liberally by resolving all doubts in favor of compensation. Section 287.800; *Thomas v. Hollister, Inc.,* 17 S.W.3d 124, 126 (Mo.App.2000).

We, therefore, hold that, when more than one employer is jointly liable for compensation, the injured employee or his dependents may, under § 287.130, elect to recover from any or all of the employers. Whether or not the employers are insured does not alter the right of election. If the employer from whom recovery is sought is not insured, the Second Injury Fund is liable for compensation under § 287.220.5.

The commission erred in interpreting and applying the law to reach a contrary result. We remand its final award to it with instructions that it shall modify the award to hold the Second Injury Fund liable to Leach's dependents for workers' compensation benefits.

THOMAS H. NEWTON, Judge, and RONALD R. HOLLIGER, Judge, concur.